***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner W. Bain Jones, Jr., along with the briefs and arguments on appeal. The appealing party has shown good ground to amend the prior Opinion and Award. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between the plaintiff and defendant-employer.
3. Harbor Specialty Insurance Company was the carrier on risk.
4. The plaintiff's average weekly wage was $350.00 yielding a compensation rate of $233.35.
5. The plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
6. Industrial Commission Forms relating to this case were stipulated into evidence as Stipulated Exhibit 2.
7. The issues before the undersigned are: (i) whether the plaintiff sustained an injury arising out of and in the course of his employment with defendant-employer; (ii) if so, what compensation, if any, is due the plaintiff; and (iii) whether the plaintiff has unjustifiably refused work in his restriction?
 ***********
Based upon all of the competent evidence in the record, the undersigned makes the following:
 FINDINGS OF FACT
1. The plaintiff began working for defendant-employer in the elastics and hardware division in November 1998. Defendant-employer produces suspenders.
2. The plaintiff had indicated when interviewing with defendant-employer he desired a managerial role based upon his past background. The plaintiff has an associate's degree in business administration from Miami Dade as well as course work in teaching and business administration from Florida International and Georgia State Universities. The plaintiff was hired by defendants as a production technician. He was subsequently promoted to the position of scheduler/shipping clerk. The plaintiff held this position on 23 June 1999.
3. On 23 June 1999, the plaintiff was requested to assist with the manual loading of boxes of suspenders onto a tractor-trailer for the Wal-Mart division of defendant-employer. This was not the normal division to which the plaintiff was assigned, and it was not a regular part of his job duties. During the course of the subsequent two days, the plaintiff assisted in manually carrying and loading 4,679 two to three-pound boxes which required repetitive reaching, lifting, and stacking above shoulder level.
4. During the course of his job on 23 June 1999, the plaintiff noticed the onset of severe pain in his left shoulder that felt like a stabbing pain. The plaintiff continued to load the truck, with his pain becoming even more severe on 24 June 1999. Thereafter plaintiff returned to his regular duties in the Barnett division. The plaintiff continued to have pain in his shoulder and reported his problems to defendants. Plaintiff was able to continue his normal job and underwent conservative medical treatment and physical therapy throughout the remainder of 1999. Due to increasing pain, the plaintiff was unable to work at all beginning on 10 January 2000.
5. As a result of his work on 23 June 1999, the plaintiff suffered a rotator cuff tear with impingement syndrome that required surgical correction. Dr. Swany performed surgery on 27 March 2000.
6. During the surgery, Dr. Swany noticed an extremely abraded tear of the superspinatus and infraspinatus tendons with a complex horizontal and vertical retracted tear of the superspinatus tendons. Dr. Swany noted that the tear's retraction could indicate that the tear is in excess of six weeks old.
7. On 12 September 2000, Dr. Swany indicated that the plaintiff had reached maximum medical improvement and assigned the plaintiff a 20% rating to his left shoulder. Dr. Swany recommended that the plaintiff continue light activities with no lifting in excess of 20 pounds and no prolonged overhead activities or crawling.
8. Dr. Swany testified that the plaintiff's prolonged loading of boxes onto a trailer could have caused the plaintiff's rotator cuff problems. Further, Dr. Swany also testified that if the plaintiff had an abraded or weakened rotator cuff, that the prolonged loading activities could have caused the rotator cuff to tear. Dr. Swany also testified that the repetitive work activities could have aggravated or weakened an already abraded or weakened rotator cuff and led to the eventual tearing.
9. After being released with restrictions by Dr. Swany, the plaintiff was not offered suitable employment by defendant-employer. Plaintiff subsequently received disability benefits and enrolled himself in community college for retraining in the computer field.
10. As a result of the acquisition or aggravation of the plaintiff's rotator cuff tear with impingement syndrome, and the resulting surgery, the plaintiff was incapable of earning wages from 10 January 2000 until the date the plaintiff returned to school.
11. On 23 June 1999, the plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant employer as a result of the plaintiff helping to load thousands of boxes onto a tractor-trailer. The plaintiff's activity loading the tractor-trailer was unusual in that it was not part of his normal job duties.
12. As a result of the incident on 23 June 1999, the plaintiff was incapable of earning wages in any employment from 10 January 2000 until the date the plaintiff began classes in community college.
13. As a result of the incident on 23 June 1999, the plaintiff sustained a 20% permanent partial disability to his left shoulder.
14. The testimony of Dr. Swany is given greater weight than that of Dr. Pistel given that Dr. Swany performed the surgery on plaintiff.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 23 June 1999, the plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. As a result of his compensable injury on 23 June 1999, the plaintiff is entitled to temporary total disability compensation from 10 January 2000 through the date the plaintiff started computer training at the community college. N.C.G.S. § 97-29.
3. As a result of his compensable injury, the plaintiff is entitled to permanent partial disability compensation at a rate of $233.35 per week for a period of 48 weeks. N.C.G.S. § 97-31.
4. Defendants shall pay all medical expenses incurred by the plaintiff as result of his compensable injury of 23 June 1999. N.C.G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his temporary total disability, defendants shall pay temporary total disability compensation to the plaintiff at the rate of $233.35 per week, from 10 January 2000 until the date the plaintiff began taking computer classes. Defendants however, are entitled to a credit for the amount the plaintiff was paid in disability benefits. Said amount, minus the credit, shall be paid to the plaintiff in a lump sum, subject to the attorney fee approved in paragraph 4.
2. For his permanent partial disability, defendants shall pay permanent partial disability compensation at a rate of $233.35 per week for a period of 48 weeks. Defendants are entitled to a credit for the amount the plaintiff was paid in disability benefits. Said amount, subject to the credit, shall be paid to the plaintiff in a lump sum, subject to the attorney fee approved in paragraph 4.
3. Defendants shall pay all medical expenses incurred by the plaintiff as a result of his compensable injury.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraphs one and two of this AWARD is approved for the plaintiff's counsel.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER